UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

WESLEY DALE DAVIS,                    §
TDCJ No. 1657873,                      §
                                       §
            Petitioner,                §
                                       §
V.                                     §    CIVIL NO. SA-14-CA-951-FB (HJB)
                                       §
WILLIAM STEPHENS, Director,            §
Texas Department of Criminal Justice,  §
Correctional Institutions Division,    §
                                       §
            Respondent.                §

## MEMORANDUM OPINION AND ORDER

Before the Court is the status of this case. Petitioner Wesley Dale Davis filed this federal

habeas corpus action in October, 2014, pursuant to Title 28 U.S.C. Section 2254 challenging his

2010 Comal County conviction in cause no. CR2009-403 for three counts of aggravated robbery and

one count of unlawful possession of a firearm. At the punishment phase of petitioner's trial, the jury

returned sentences of seventy years for each of the aggravated robbery counts and ten years for the

illegal possession of a firearm count, all to run concurrently. For the reasons set forth below,

petitioner is not entitled to federal habeas corpus relief or a Certificate of Appealability from this

Court.

## I. Background

The Texas Third Court of Appeals' opinion affirming petitioner's convictions and sentences

sets forth the facts of petitioner's offense:

> The primary factual dispute during trial was not what happened during the
> robbery of a restaurant on January 15, 2009, but who committed the robbery. The
> owner and two workers of the restaurant testified for the State. They testified that two
> men with guns entered the restaurant after it was closed and that both men wore

sunglasses and had their faces covered with bandanas and their heads covered with a "hoodie" and "a beanie with a hood." During the robbery, the two men pepper sprayed the owner and the workers, one of the men hit the owner on the head with his gun, and the men placed the owner and the workers in the bathrooms before the men left the restaurant. After the owner and the workers heard the men leave the restaurant, they escaped the bathrooms, and the owner and one of the workers saw a white pickup truck driving away. They immediately called the police and provided a description of the truck. They, however, were unable to identify appellant as one of the intruders.

Another witness at the trial was a peace officer who saw a white pickup truck in the vicinity shortly after the robbery. The truck matched the reported description of the truck that was involved in the robbery. The officer signaled for the truck to pull over, but it did not immediately pull over and, when it did, the officer saw two males exit the truck and then run away. The officer arrested the driver of the truck, Anna Marie Diaz. Appellant was the truck's owner, and, although no gun was found, the truck contained hooded sweatshirts, sunglasses, bandanas, a "beanie," and an identification card with appellant's name and photograph on it. The officer's stop of the truck was recorded on his in-car camera, and the video was played for the jury. The video shows the two men exiting the truck and running away. At trial, the officer identified appellant as one of the men that he saw exiting the truck and running away.

Diaz, the driver of the truck, had not been indicted for the robbery at the time of trial. She testified that appellant and Roberto Mendez, who Diaz was dating at the time, were in the truck with her when they were stopped by the peace officer. She testified that she took appellant and Mendez to the restaurant, that she waited in the truck while they went inside, and that she drove away from the restaurant when the two men returned to the truck and appellant told her to "go, go, go." She denied knowledge or involvement with the robbery, claiming that she drove appellant and Mendez to the restaurant to purchase tacos.

Appellant's mother also testified at trial, and the jury heard a recorded interview between the mother and the police that occurred after the robbery took place. Although appellant's mother provided explanations at trial for her previous statements to the police, she stated that her gun was missing at the time of the robbery, that appellant had told her that he was going to rob somebody a few weeks before the restaurant was robbed, and that, after the robbery, appellant apologized to her and told her that he sold the gun so he could go to Mexico.

*Davis v. State*, 2012 WL 3089312, at *1-2 (Tex. App. – Austin, July 25, 2012, *pet. ref'd*).

The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review on December 19, 2012.  Petitioner filed an application for state habeas corpus relief on December 3, 2013.  The Texas Court of Criminal Appeals denied petitioner's state habeas corpus application on August 20, 2014, without written order based on the findings of the trial court made without a hearing.  *Ex parte Wesley Dale Davis*, WR-80,776-01 (Tex. Crim. App. Aug. 20, 2014).

## II. Proceedings in this Court

Petitioner filed his federal habeas corpus petition and brief in support in this cause on October 28, 2014 (ECF nos. 1 & 2).  As grounds for relief, petitioner argued:  (1) his trial counsel rendered ineffective assistance during voir dire by failing to challenge as biased for cause or to strike peremptorily venire member (and later petit juror) Yvonne Bays, who stated she would not afford petitioner the presumption of innocence if he had a prior felony conviction, (2) petitioner was deprived of a fundamentally fair trial due to biased juror Bays' service on petitioner's petit jury, and (3) Article 35.16 of the Texas Code of criminal Procedure is unconstitutional because it permitted petitioner's trial counsel to waive petitioner's right to a fair trial without petitioner's knowledge or consent (by failing to raise a challenge for cause to a biased juror).

Respondent filed his answer January 30, 2015 (ECF no. 10), arguing therein the state trial court made a factual finding during petitioner's state habeas corpus proceeding that juror Bays was not biased and that petitioner's trial counsel had furnished the state habeas court with an affidavit explaining his reasons for choosing not to challenge or strike Ms. Bays from the jury.

Petitioner filed a reply to respondent's answer on March 23, 2015 (ECF no. 16), arguing he was denied discovery and an evidentiary hearing in his state habeas corpus proceeding, the state

habeas court unreasonably applied the *Strickland* standard to petitioner's ineffective assistance claim, and he did not waive his right to be tried before an impartial jury.

### III. <u>AEDPA Standard of Review</u>

Because petitioner filed his federal habeas corpus action after the effective date of the AEDPA, this Court's review of petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S. Ct. 1910, 1918, 150 L. Ed. 2d 9 (2001). Under the AEDPA standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown v. Payton*, 544 U.S. at 141, 125 S. Ct. at 1438; *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S. Ct. 7, 10, 157 L. Ed. 2d 263 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts

the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'").  A state court's failure to cite governing Supreme Court authority does not, *per se*, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. at 16, 124 S. Ct. at 10.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.  *Brown v. Payton*, 544 U.S. at 141, 125 S. Ct. at 1439; *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534-35, 156 L. Ed. 2d 471 (2003).  A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33, 130 S. Ct. 665, 673, 175 L. Ed. 2d 582 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of...clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins v. Smith*, 539 U.S. at 520-21, 123 S. Ct. at 2535.  The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939, 167 L. Ed. 2d 836 (2007) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Wiggins v. Smith*, 539 U.S. at 520, 123 S. Ct. at 2535; *Price v. Vincent*, 538 U.S. 634, 641, 123 S.

Ct. 1848, 1853, 155 L. Ed. 2d 877 (2003) ("it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").

As the Supreme Court has recently explained:

Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*Bobby v. Dixon*, ___ U.S. ___, ___, 132 S. Ct. 26, 27, 181 L.Ed.2d 328 (2011) (*quoting Harrington v. Richter,* 562 U.S. 86, 103, 131 S. Ct. 770, 786–87, 178 L.Ed.2d 624 (2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 2147, 158 L.Ed.2d 938 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003).

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. Section 2254(d)(2) of Title 28, United States Code, provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams v. Taylor*, 529 U.S. at 410, 120 S. Ct. at 1522 ("[A]n *unreasonable*

6

application of federal law is different from an *incorrect* application of federal law.").  Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination.  *Wood v. Allen*, 558 U.S. at 301, 130 S. Ct. at 849; *Rice v. Collins*, 546 U.S. 333, 341-42, 126 S. Ct. 969, 976, 163 L. Ed. 2d 824 (2006).

In addition, Section 2254(e)(1) provides a petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro v. Landrigan*, 550 U.S. at 473-74, 127 S. Ct. at 1939-40 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice v. Collins*, 546 U.S. 333, 338-39, 126 S. Ct. 969, 974, 163 L. Ed. 2d 824 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke,* 545 U.S. 231, 240, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1).  It remains unclear at this juncture whether Section 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under Section 2254(d)(2).  *See Wood v. Allen*, 558 U.S. at 300, 130 S. Ct. at 849 (choosing not to resolve the issue of the possible application of Section 2254(e)(1) to all challenges to a state court's factual findings); *Rice v. Collins*, 546 U.S. at 339, 126 S. Ct. at 974 (likewise refusing to resolve the Circuit split regarding the application of Section 2254(e)(1)). However, the deference to which state-court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review.  *See Miller-El v. Dretke*, 545 U.S.

7

at 240, 125 S. Ct. at 2325 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief.").  Finally, in this Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision.  *See Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (federal habeas review of a state court's adjudication involves review only of a state court's decision, not the written opinion explaining the decision), *cert. denied*, 132 S. Ct. 124 (2011); *St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006) (holding Section 2254(d) permits a federal habeas court to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 550 U.S. 921 (2007); *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006) (holding the same), *cert. denied*, 550 U.S. 920 (2007); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) (holding the precise question before a federal habeas court in reviewing a state court's rejection on the merits of an ineffective assistance claim is whether the state court's ultimate conclusion was objectively reasonable), *cert. denied*, 541 U.S. 1045 (2004); *Anderson v. Johnson*, 338 F.3d 382, 390 (5th Cir. 2003) (holding a federal habeas court reviews only a state court's decision and not the opinion explaining that decision); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*) (holding a federal court is authorized by §2254(d) to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 537 U.S. 1104 (2003).

## IV. Ineffective Assistance by Trial Counsel

A.  The Complaints

Petitioner argues his trial counsel should have questioned venire member Bays more thoroughly regarding her views on the presumption of innocence, either challenged Bays for cause or exercised a peremptory strike against her, and failed to ensure petitioner would receive a trial before an impartial jury.

B.  The Constitutional Standard

The Sixth Amendment entitles criminal defendants to "the effective assistance of counsel," *i.e.*, legal representation that does not (1) fall below an objective standard of reasonableness in light of prevailing professional norms and the circumstances of the defendant's case (*Wong v. Belmontes*, 558 U.S. 15, 16-17, 130 S. Ct 383, 384, 175 L. Ed. 2d 328 (2009);  *Bobby v. Van Hook*, 558 U.S. 4, 7, 130 S. Ct. 13, 16, 175 L. Ed. 2d 255 (2009)); and (2) give rise to a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different (*Porter v. McCollum*, 558 U.S. 30, 38-40, 130 S. Ct. 447, 452-53, 175 L. Ed. 2d 398 (2009); *Wong v. Belmontes*, 558 U.S. at 19-20, 130 S. Ct. at 386).

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must

show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, i.e., establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 1511, 146 L. Ed. 2d 389 (2000).  In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.  *Strickland v. Washington*, 466 U.S. at 687-91, 104 S. Ct. at 2064-66.  Courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight.  *See Wiggins v. Smith*, 539 U.S. at 523, 123 S. Ct. at 2536 (holding the proper analysis under the first prong of *Strickland* is an objective review of the reasonableness of counsel's performance under prevailing professional norms which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time).  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. at 7, 130 S. Ct. at 16; *Strickland v. Washington*, 466 U.S. at 688-89, 104 S. Ct. at 2065.  It is strongly presumed counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Strickland v. Washington*, 466 U.S. at 690, 104 S. Ct. at 2066.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins v. Smith*, 539 U.S. at 534, 123 S. Ct. at 2542; *Strickland v. Washington*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Wiggins v. Smith*, 539 U.S. at 534, 123 S. Ct. at 2542; *Strickland v. Washington*, 466 U.S. at 694, 104 S. Ct. at 2068.

In evaluating petitioner's complaints about the performance of his counsel under the AEDPA, i.e., those complaints which the state courts have addressed on the merits, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004). In making this determination, this Court must consider the underlying *Strickland* standard. *Id.* In those instances in which the state courts failed to adjudicate either prong of the *Strickland* test, such as those complaints the state courts summarily dismissed under the Texas writ-abuse statute or which petitioner failed to fairly present to the state courts, this Court's review of the un-adjudicated prong is *de novo*. *See Porter v. McCollum*, 558 U.S. at 39, 130 S. Ct. at 452 (holding *de novo* review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state courts had failed to address this prong of *Strickland* analysis); *Rompilla v. Beard*, 545 U.S. at 390, 125 S. Ct. at 2467 (holding *de novo* review of the prejudice prong of *Strickland* required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins v. Smith*, 539 U.S. at 534, 123 S. Ct. at 2542 (holding the same).

11

A habeas petitioner has the burden to prove both prongs of the *Strickland* ineffective assistance standard by a preponderance of the evidence. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir.), *cert. denied*, 558 U.S. 839 (2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008), *cert. denied*, 556 U.S. 1240 (2009); *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000), *cert. denied*, 522 U.S. 1067 (2001). Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Bell v. Cone*, 535 U.S. 685. 698, 122 S. Ct. 1843, 1852, 152 L. Ed. 2d 914 (2002); *Strickland v. Washington*, 466 U.S. at 690, 104 S. Ct. at 2066; *Scheanette v. Quarterman*, 482 F.3d 815, 820 (5th Cir. 2007), *stay of execution denied*, 555 U.S. 1160 (2009); *Sonnier v. Quarterman*, 476 F.3d 349, 356 (5th Cir. 2007), *cert.* denied, 552 U.S. 948 (2007).

C.  Analysis of Trial Counsel's Actions With Respect to Venire Member Bays

1. State Court Disposition

Petitioner presented the same complaints about the performance of his trial counsel as his first ground for relief in his state habeas corpus application.[1]

In the course of petitioner's state habeas corpus proceeding, the state habeas trial court reviewed the affidavit of petitioner's trial counsel and found (1) Yvonne Bays was not biased, (2) the seating of Ms. Bays was a conscious decision by counsel and petitioner and not the result of ignorance, neglect, or mistake, and (3) the petitioner and his trial counsel did not believe Ms. Bays

---

[1] Transcript of pleadings, motions, and other documents filed in petitioner's state habeas corpus proceeding (henceforth "State Habeas Transcript"), at p. 9.

was strongly biased and jointly decided to waive any challenge to Ms. Bays.[2]  The state trial court also concluded that, even if petitioner's trial counsel rendered deficient performance in failing to challenge or strike venire member Bays, petitioner could not satisfy the prejudice prong of *Strickland* analysis because the evidence of petitioner's guilt was overwhelming.[3]

The affidavit of attorney Anthony Cantrell, upon which the state habeas court relied in making its findings and conclusions, states in pertinent part, that (1) petitioner rejected a plea offer and chose to elect jury sentencing, (2) a police officer identified petitioner as one of two males who fled the petitioner's vehicle when the officer stopped petitioner's vehicle shortly after the robbery, (3) he and petitioner discussed the selection of the jury and both felt that female jurors would be more sympathetic to petitioner's mitigation evidence, which showed petitioner had been raised by a prostitute who taught petitioner how to burglarize homes to satisfy her drug habit and petitioner experienced homelessness and saw his mother living with pimps and drug dealers throughout his youth, and (4) Yvonne Bays was kept on the jury because "we were not convinced she was strongly biased and believed that she would be better suited to mitigation evidence."[4]  Petitioner did not furnish the state habeas court with an affidavit or sworn statement controverting any of the assertions made by his trial counsel. Nor did petitioner furnish the state habeas court with any other evidence challenging the statements made by attorney Cantrell in his affidavit.

---

[2] Supplemental State Habeas transcript, i.e., Trial Court Order issued March 31, 2014, at pp. 8-10.  The same state trial judge presided over petitioner's trial and petitioner's state habeas corpus proceeding, i.e., Judge Jack Robison.  Judge Robison expressly stated in his Order issued March 31, 2014, setting forth his findings and conclusions that he was relying upon, in part, his recollection of the events at trial to make his factual findings and legal conclusions. *Id.* at p. 8.

[3] *Id.* at p. 11-12.

[4] Affidavit of Anthony B. Cantrell, Supplemental State Habeas Transcript, at pp. 24-27.

The state trial court ultimately concluded the decision by petitioner's trial counsel to retain Yvonne Bays on the jury constituted an objectively reasonable form of trial strategy and that petitioner's complaints about his trial counsel's decision to retain Ms. Bays on the jury did not satisfy the prejudice prong of *Strickland* analysis.[5]  The Texas Court of Criminal Appeals denied petitioner's state habeas corpus application without written order based on the findings of the trial court made without a hearing.  *Ex parte Wesley Dale Davis*, WR 80,776-01 (Tex. Crim. App. Aug. 20, 2014).

2.  <u>No Deficient Performance</u>

This Court has independently reviewed the record from petitioner's voir dire and finds only one passage addressing the issue of potential bias and venire member Bays.  Contrary to petitioner's assertions, the state trial court expressly found as a matter of fact that venire member Bays did not raise her hand when attorney Cantrell asked the jury venire panel as a group "How many of you believe that if you've been convicted of a crime and you've been charged again with another crime, that you would lose that presumption of innocence when you come to court?"[6]  As the state habeas trial court explained in its findings of fact and conclusions of law, attorney Cantrell then briefly discussed with another member of the jury venire named Turpin whether a person who had previously been convicted of a crime and who was again brought before a court and charged with

---

[5] Supplemental State Habeas Transcript, at pp. 10-11, 14-15, 19, 21-22.

[6] *Id.* at p. 14.  In point of fact, the verbatim transcript from the petitioner's voir dire states there was "no response" from anyone on the venire panel when attorney Cantrell asked this specific question to the group.  Statement of facts from petitioner's trial ("henceforth "S.F. Trial"), Volume 2 of 6, at p. 156. [*This Court's citations to pages from the S.F. Trial are to the court reporter's original page numbers found in the upper right corner of each page of the verbatim transcription from petitioner's trial.*]  Ms. Bays responded subsequently to what the state trial court called attorney Cantrell's next leading and somewhat confusing statement "That if someone has been convicted of a crime once, and they've been charged again, that they have a bias.  Right?"   Id. at p. 157.

a new criminal offense was "falling back into the same pattern."[7]  After that exchange, attorney

Cantrell asked "Anybody else on the second row believe that?  Third?"[8]  Only then did Ms. Bays

apparently raise her hand.  At which point the following exchange occurred:

> MR. CANTRELL: Yes, ma'am.  And let's see.  Mr. Beyer?  yeah.  And let's see, Tell
> me your name.
>
> VENIRE BAYS:  Bays, B-a-y-s.
>
> MR. CANTRELL: Okay.  Yvonne Bays?
>
> VENIRE BAYS: Yeah.
>
> MR. CANTRELL: Okay.  That's okay.  Look, this is what this process is all about.
> If I can't get a fair trial, that means sometimes down the road your loved ones, your
> spouses, your grand-kids, your friends, your neighbors aren't going to get a fair trial.
> We have to have a fair jury system with complete unbiased witnesses when it comes
> to these kind of criminal cases.
>
> If we can't get -- I'll get right to you -- if we can't get past the presumption
> of innocence, if we just can't even get past that, how do we get a fair trial?  We can't.
>
> So I appreciate your honesty very much.  Ms. Bays.  I really do.[9]

Given the ambiguity in the transcription from the voir dire examination of the jury venire,

the state habeas trial court's factual finding that venire member Bays did not express a disqualifying

bias has not been overcome by clear and convincing evidence.  On the contrary, it is far from clear

whether she was expressing a concern over whether she could not grant petitioner the presumption

of innocence or whether she was merely agreeing with attorney Cantrell's more vague suggestion

that a person who had been convicted of a crime in the past and is hauled into court again to face a

---

[7] S.F. Trial, Volume 2 of 6, at p. 157.

[8] *Id.*

[9] S.F. Trial, Volume 2 of 6, at pp. 157-58.

new criminal charge might be falling back into the same pattern.  More significantly, the record before the state habeas court did not include any assertions by venire member Bays that she would be unable to render a verdict based solely upon the evidence and the law as set forth in the trial court's jury instructions.  The same state trial judge who presided over voir dire examination at petitioner's trial also made the factual finding in the course of petitioner's state habeas corpus proceeding that Yvonne Bays was not biased.

"[J]ury selection is more art than science."  *Cordova v. Johnson,* 993 F. Supp. 473, 530 (W.D. Tex. 1998), *CPC denied,* 157 F.3d 380 (5th Cir.1998), *cert. denied,* 525 U.S. 1131, 119 S.Ct. 922, 142 L.Ed.2d 971 (1999).  The presumption of reasonableness which is afforded trial counsel's strategic decision-making under *Strickland* applies with equal force to decisions regarding how to question venire members during voir dire and whether to challenge a particular venire member for cause or employ a peremptory challenge against a particular venire member.  *See Neville v. Dretke,* 423 F.3d 474, 482–83 (5th Cir.2005) (Petitioner was obligated to overcome the presumption that his trial counsel's decision not to question venire members regarding the issue of lupus was sound trial strategy).

The state habeas court's finding that attorney Cantrell and petitioner jointly decided to retain Ms. Bays on the jury because they wished to have as many female jurors as possible, because they believed such jurors would be more sympathetic toward petitioner's mitigation evidence at the punishment phase of trial,[10] is not overcome by any clear and convincing evidence now before this

---

[10] Supplemental State Habeas Transcript, at p. 21 ("Applicant and his counsel jointly agreed to keep [Yvonne] Bays on the jury in the hope that women such as Ms. Bays would be more favorable to Applicant and his mitigation evidence at sentencing.").  This factual finding is fully consistent with the affidavit of petitioner's trial counsel, attorney Cantrell, which the state trial court found to be credible.  *See* Supplemental State Habeas Transcript, at p. 26 (Affidavit of

Court.  The vast majority of petitioner's punishment phase mitigation witnesses were female, i.e., petitioner's mother, petitioner's grandmother, and petitioner's girlfriend.[11]  It was objectively reasonable for petitioner's trial counsel to believe that a jury composed primarily of women might be more sympathetic to the mitigation evidence petitioner planned to present during the punishment phase of trial.  Given the overwhelming evidence of petitioner's guilt, it was likewise objectively reasonable for petitioner's trial counsel to focus during voir dire upon finding jurors who would feel sympathy toward petitioner's difficult childhood during voir dire examination.  Finally, petitioner offer no fact-specific allegations or evidence suggesting what information a more concentrated voir dire examination of venire member Bays might have revealed had attorney Cantrell asked venire member Bays more specific, less ambiguous, questions about her ability to render a verdict based solely upon the evidence and the law.

Under such circumstances, the state habeas court's conclusion that the decision by petitioner's counsel not to challenge for cause or strike venire member Bays was a reasonably objective exercise of trial strategy was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor

---

Anthony B. Cantrell: "Yvonne Bays was kept on the jury because we were not convinced she was strongly biased and believed that she would be better suited to mitigation evidence.").

[11] Petitioner's mother testified at the punishment phase of petitioner's trial that she ran away from home as a teenager, became a prostitute, lived with pimps and drug dealers, began using drugs, taught petitioner how to break into houses to steal things to feed her drug habit, and even gave petitioner drugs at age eleven to gain his cooperation.  S.F. Trial, Volume 4 of 6, testimony of Della D. Davis, at pp. 125-42.  Petitioner's grandmother testified, in pertinent part, that petitioner was a loving son and grandson, a good father who worked hard to support his own son, and petitioner had taken care of his mother when she could not take care of herself.  S.F. Trial, Volume 4 of 6, testimony of Mary Elrod, at pp. 142-53.  Petitioner's girlfriend testified petitioner was a stable influence in her life, cared for their child, and was very good to her, never violent.  S.F. Trial, Volume 4 of 6, testimony of Melissa Castilleja, at pp. 154-65.

based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

3. No Prejudice

The evidence establishing petitioner's role in the armed robbery of the Solms Taco House was overwhelming.  Petitioner was observed by a law enforcement officer (and recorded by the officer's vehicle camera) fleeing petitioner's vehicle only minutes after the robbery.[12]  The driver of petitioner's vehicle identified petitioner as one of the two males who fled petitioner's vehicle when she was forced to stop only minutes after the robbery at the Taco House.[13]  One of the victims of the robbery was able to identify petitioner's pickup truck as the vehicle used by the robbers to make their getaway based upon the distinctive pair of bumper stickers on the rear of the vehicle, i.e., Phoenix Suns and Phoenix Cardinals bumper stickers.[14]  It was undisputed at trial that petitioner was born

----

[12] S.F. Trial, Volume 3, testimony of Blake Alexius, at pp. 20-21.  Officer Alexius emphasized on cross-examination that petitioner was the first of the two males who exited the moving vehicle driven by Anna Marie Diaz.  Id., at pp. 33, 35-38.

[13] S.F. Trial, Volume 3, testimony of Anna Marie Diaz, at pp. 54-58.  Ms. Diaz also testified that (1) petitioner and Roberto Mendez entered the Taco House on the afternoon in question after she drove them there, (2) petitioner and Mendez exited the Taco House and petitioner told her to "go, go, go," (3) she did not see or smell any tacos when the two men re-entered the truck, (4) petitioner directed her where to drive after they left the Taco House, and (5) she was certain petitioner and Mendez were the two men who went in and out of the Taco House that day.  Id.

[14] S.F. Trial, Volume 2, testimony of Ricardo Zavala, at pp. 239, 242-43.  Mr. Zavala testified, in part, that (1) he ran outside immediately after the robbery and saw a white Dodge pickup leaving the scene just as one of the two robbers entered that vehicle, (2) State Exhibit no. 11, identified by other witnesses as a white pickup registered to petitioner, was the pickup he saw leaving the scene, and (3) he recognized the pickup by virtue of the Phoenix Cardinals and Phoenix Suns bumper stickers on the rear bumper of the vehicle.  Id.

in Phoenix.[15]  Inside the petitioner's pickup truck, law enforcement officers found an identification

card containing petitioner's photograph and bandanas and hooded sweat shirts which matched those

worn by the two armed robbers of the Taco House.[16]  Under such circumstances, the state habeas

court reasonably concluded petitioner's complaint about the presence of Yvonne Bays on his jury

did not satisfy the prejudice prong of *Strickland* analysis with regard to the guilt-innocence phase

of petitioner's trial.

       During the punishment phase of his petitioner's trial, the prosecution presented evidence

showing (1) petitioner had been arrested for breaking into a residence in an incident in which he

kicked or broke down a door, sending the front door and door frame into the house,[17] (2) petitioner

fatally shot a man in the back multiple times during an altercation in 2002,[18] and (3) petitioner had

---

[15] S.F. Trial, Volume 3, testimony of Della D. Davis, at p. 106.  Petitioner's mother also testified petitioner was a Phoenix Suns fan.  *Id.*

[16] S.F. Trial, Volume 3, testimony of Blake Alexius, at pp. 25-29, 31; Volume 3, testimony of Steven Morris, at pp. 90-102.  Among the items found inside petitioner's white pickup truck were a photo ID card bearing petitioner's photograph and name, a gray hooded sweatshirt and sunglasses, blue and white bandanas, a two-toned baseball cap, a cloth winter cap, a black and gray hooded sweatshirt.  S.F. Trial, Volume 3, testimony of Steven Morris, at pp. 90-102.
       The three victims of the armed robbery described the two male assailants as wearing (1) a white bandana and a blue bandana and big sunglasses over his face and a hooded sweatshirt (S.F. Trial, Volume 2, testimony of Ricardo Zavala, at p. 238) and (2) a jacket and black sunglasses (S.F. trial, Volume 2, testimony of Teodora Gomez, at p. 266), respectively.  It was undisputed the robbers sprayed all three victims with pepper spray.

[17] S.F. Trial, Volume 4, testimony of Andre Deshay Jackson, at pp. 79, 81, 82, 89; testimony of Michael D. Watts, at pp. 91-92, 96.  Former officer Watts also testified he recovered a handgun that he had seen being thrown from the suspects' vehicle immediately before Jackson's and petitioner's arrest and that a bag of marijuana was found in the back seat of the vehicle.  S.F. Trial, Volume 4, testimony of Michael D. Watts, at pp. 95-97.

[18] S.F. Trial, Volume 4, testimony of Maria Olga Perez, at pp. 103-04, 106; testimony of Erlinda C. Hernandez, at pp. 110-12; testimony of Esperanza Hernandez, at pp. 114-17;

previously served a term of imprisonment for burglary.[19]   In addition, the petitioner's sentencing jury also had before it the evidence introduced during the guilt-innocence phase of trial which showed the petitioner and his accomplice pepper sprayed and terrorized their female victims and pistol whipped their male robbery victim.[20]   Petitioner's mother testified she began giving drugs to petitioner when he was eleven and taught petitioner during his adolescence how to break into houses to steal property to support her drug habit.[21]   All three of petitioner's punishment phase witnesses testified petitioner was making good money doing construction work at the time petitioner committed the robbery of the Taco House.[22]

At the punishment phase of trial, the prosecutor asked the jury to return a verdict imposing a life sentence.[23]   The jury instead imposed concurrent seventy year sentences on the aggravated robbery counts and a ten year sentence on the illegal possession of a firearm charge.   Given the

---

testimony of Valerie Cortez, at pp. 119-21.  Ms. Perez testified she saw a knife in the hand of Jason Lagunas immediately before petitioner shot Lagunas but none of the other witnesses stated they saw any weapon in Mr. Lagunas' hand.

[19] The documentary evidence introduced and admitted during the punishment phase of petitioner's trial included a copy of a judgment imposing a term of deferred adjudication probation on petitioner and a judgment revoking that term of probation and imposing a term of incarceration in Guadalupe County in cause no. 98-0934-CR.  *See Prosecution Exhibits P-44- P-46 found in S.F. Trial, Volume 6 of 6.*

[20] S.F. Trial, Volume 2, testimony of Ricardo Zavala, at pp. 232-38, 245 (testifying his assailant struck Zavala in the head with a gun causing a blood wound which required ten stitches to close); testimony of Teodora Gomez, at pp. 268-69; Volume 3, testimony of Selia Medrano,. at pp. 6, 9.

[21] S.F. Trial, Volume 4, testimony of Della D. Davis, at pp. 128, 130-31, 140.

[22] S.F. Trial, Volume 4, testimony of Della D. Davis, at p. 141; testimony of Mary Elrod, at p. 150-51; testimony of Melissa Castilleja, at pp. 164-65.

[23] S.F. Trial, Volume 5, at p. 54.

evidence admitted during both phases of trial, this Court independently concludes there is no reasonable probability that, but for the failure of petitioner's trial counsel to more throughly interrogate, challenge for cause, or peremptorily strike venire member Yvonne Bays from petitioner's jury panel, the outcome of either phase of petitioner's trial would have been any different.  The Texas Court of Criminal Appeals' conclusion, during the course of petitioner's state habeas corpus proceeding, that petitioner's complaints of ineffective assistance all fail to satisfy the prejudice prong of *Strickland* analysis was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus  proceeding.

## V. <u>Biased Juror Claim</u>

### A.  <u>The Claim</u>

Petitioner argues the state habeas court erroneously concluded venire member Bays was not biased.  He argues the presence of juror Bays on his petit jury deprived him of an impartial jury.

### B.  <u>State Court Disposition</u>

Petitioner presented the same complaint about Ms. Bays' alleged bias as his second ground for relief in his state habeas corpus application.[24]  As explained above in Section IV.C.1., the state habeas trial court found as a factual matter that juror Bays was not biased,[25] and the Texas Court of

---

[24] State Habeas Transcript, at p. 10.

[25] *See* Supplemental State Habeas Transcript, at p. 15 ("Applicant has not shown Yvonne Bays was biased by a preponderance of the evidence. [Ms.] Bays never made any clear, express statement of bias, as occurred in Applicant's cited case *Hughes v. U.S.*, 248 F.3d at 456 (where juror, citing friends and relatives in law enforcement, stated unequivocally 'I don't think I could be fair.'").  The state trial court went on to find (1) Ms. Bays had not raised her hand in response

Criminal Appeals denied petitioner state habeas relief based upon the trial court's factual findings. *Ex parte Wesley Dale Davis*,  WR 80,776-01 (Tex. Crim. App. Aug. 20, 2014).

C.  AEDPA Analysis

Also as explained above, having independently reviewed the same evidence petitioner presented to the state habeas court, this Court concludes there is no clear and convincing evidence currently before this Court sufficient to overcome the state trial court's factual finding that juror Bays was not biased.  The transcription from petitioner's voir dire shows Yvonne Bays did not raise her hand when attorney Cantrell asked whether anyone on the jury could not grant petitioner the presumption of innocence based upon the fact he had a prior criminal conviction.  Instead, Ms. Bays' only apparent response was to a different question asking whether she thought a person who had committed a prior offense and was charged with a new offense might be falling back into the same pattern.  The same state trial judge who presided over and personally observed voir dire during petitioner's trial court proceeding also made the factual determination that Ms. Bays was not biased. Petitioner has failed to overcome the presumption of validity which this Court must afford factual findings under the AEDPA.  *See Wood v. Allen*, 558 U.S. at 301, 130 S. Ct. at 849 ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").  Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding) on habeas review, this does not suffice to supersede the trial court's

---

to defense attorney Cantrell's question about whether a person with a prior conviction would lose the presumption of innocence and (2) Ms. Bays gave no clear indication that she agreed with any of Mr. Cantrell's other statements.  *Id.* at p. 16.  As explained above, petitioner has identified no evidence in the record showing any of these factual determinations, made by the same state trial judge who presided over voir dire at petitioner's trial, were erroneous.

factual determination.  *Rice v. Collins*, 546 U.S. 333, 341-42, 126 S. Ct. 969, 976, 163 L. Ed. 2d 824 (2006).  Section 2254(e)(1) provides a petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous.  *Schriro v. Landrigan*, 550 U.S. at 473-74, 127 S. Ct. at 1939-40 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice v. Collins*, 546 U.S. at 338-39, 126 S. Ct. at 974 ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke,* 545 U.S. 231, 240, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1).

The Supreme Court has admonished reviewing courts to defer to the trial court's resolution of questions of bias arising from a potential juror's conflicting voir dire answers because the trial court had the opportunity to observe the demeanor of the potential juror.  *Uttecht v. Brown*, 551 U.S. 1, 20, 127 S. Ct. 2218, 2230, 167 L. Ed. 2d 1014 (2007) ("where, as here there is a lengthy questioning of a prospective juror and the trial court has supervised a diligent and thoughtful *voir dire*, the trial court has broad discretion.").  Petitioner has identified no specific facts in the record which compel a different conclusion from that reached by the state trial court regarding juror Bay's alleged bias.  The Texas Court of Criminal Appeals' rejection on the merits, during petitioner's state habeas corpus proceeding, of petitioner's allegation of bias on the part of juror Bays was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as

23

determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

## VI. <u>Unconstitutional State Statute</u>

A.  <u>The Claim</u>

Petitioner argues that Article 35.16 of the Texas Code of Criminal Procedure violated his federal constitutional right to due process of law by furnishing a basis for a finding of waiver of his right to be tried before a fair and impartial jury.  Petitioner once again appears to be complaining in this claim about his trial counsel's decision not to challenge venire member Bays for cause.

B.  <u>State Court Disposition</u>

Petitioner presented essentially the same argument as his third ground for relief in his state habeas corpus application.[26]  The state habeas trial court found that (1) petitioner and his trial counsel believed Bays was not strongly biased and (2) petitioner and his trial counsel jointly agreed to keep Yvonne Bays on the jury in the hope that women such as Ms. Bays would be more favorable to petitioner and his mitigation evidence at the punishment phase of trial.[27]  The state trial court also found as a matter of fact that (1) petitioner failed to show Yvonne Bays was biased and (2) Ms. Bays never made any clear, express statement of bias.[28]  The Texas Court of Criminal Appeals rejected petitioner's constitutional challenge to Article 35.16 of the Texas Code of Criminal Procedure when it denied petitioner state habeas corpus relief based upon the state trial court's factual findings.  *Ex parte Wesley Dale Davis*,  WR 80,776-01 (Tex. Crim. App. Aug. 20, 2014).

---

[26] State Habeas Transcript, at p. 11.

[27] Supplemental State Habeas Transcript, at p. 21.

[28] *Id.* at p. 15.

C.  AEDPA Analysis

Article 35.16 of the Texas Code of Criminal Procedure is a lengthy statutory provision addressing jury selection in criminal trials which provides, generally, that (1) a challenge for cause, alleging some fact which renders the potential juror incapable or unfit to serve on the jury, may be raised by either party for any of a number of listed reasons, (2) the state may raise a challenge for cause for any of three listed reasons, and (3) the defense may challenge for cause based upon either (a) the potential juror being related through consanguinity or affinity to the injured person or (b) the potential juror has bias of prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either at the guilt innocence phase of trial or in mitigation at the punishment phase.

Because the state habeas court expressly found as a factual matter that juror Bays was not biased and petitioner has failed to overcome that factual finding, any complaint petitioner may have with the provisions of Article 35.16 which permit a challenge for cause based upon perceived bias in a potential juror cannot rise above the level of harmless error.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (holding the test for harmless error in a federal habeas corpus action brought by a state prisoner is "whether the error had substantial and injurious effect or influence in determining the jury's verdict").  Because petitioner has failed to overcome the state habeas court's factual determination that juror Bays was not biased, any complaint petitioner wishes to raise regarding the provisions of Article 35.16 and their application to his trial amounts to complaint about a matter which had no substantial or injurious effect or influence in determining the jury's verdict at either phase of his trial.  Furthermore the state habeas court expressly found as a matter of fact, and petitioner has failed to refute, that petitioner and his

trial counsel jointly agreed to retain Ms. Bays on the jury panel because of their desire to have as many female jurors as possible in the hope such jurors would be more favorably disposed to petitioner's punishment phase mitigation evidence.[29]

### VII. Requests for Evidentiary Hearing and Factual Development

Petitioner has filed motions requesting discovery and an evidentiary hearing (ECF nos. 14-15). Petitioner is entitled to neither under the AEDPA. Under the AEDPA, the proper place for development of the facts supporting a claim is the state court. *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir.) (holding the AEDPA clearly places the burden on a petitioner to raise and litigate as fully as possible his federal claims in state court), *cert. denied*, 522 U.S. 984 (1997). Furthermore, where a petitioner's claims have been rejected on the merits, further factual development in federal court is effectively precluded by virtue of the Supreme Court's holding in *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398-1400, 179 L. Ed. 2d 557 (2011) (holding an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by §2254(d)(1)); *see Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2015) ("When, as here, a habeas petitioner's claim has been adjudicated on the merits in state court, 'review under § 2254(d)(1) is limited to the record that was before the state court.'" (*quoting Cullen v. Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1398)); *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (holding the same), *cert. denied*, ___ U.S. ___, 132 S.Ct. 1100, 181 L.Ed.2d 987 (2012). Thus, petitioner is not entitled to a federal evidentiary hearing on any of his claims herein.

---

[29] Supplemental State Habeas Transcript, at p. 21 ("Applicant and his counsel jointly agreed to keep [Yvonne] Bays on the jury in the hope that women such as Ms. Bays would be more favorable to Applicant and his mitigation evidence at sentencing.").

Petitioner is also not entitled to further factual development of his claims herein.   This Court's AEDPA review of petitioner's claims, which were adjudicated on the merits by the state habeas court, is limited to review of the evidence that was properly before the state habeas court. *See Woodfox v. Cain*, 772 F.3d 358, 368 (5th Cir. 2014) ("The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance."), *cert. filed, April 27, 2015, no.* 14-1288); *Charles v. Stephens*, 736 F.3d 380, 387 (5th Cir. 2013) ("a factual determination made in state court 'shall be presumed to be correct, § 2254(e)(1), and federal courts must apply § 2254(d)(1) using 'the record that was before the state court.'" (*quoting Cullen v. Pinholster,* ___ U.S. at ___, 131 S.Ct. at 1398)), *cert. denied*, 135 S. Ct. 52 (2014); *Pitonyak v. Stephens*, 732 F.3d 523, 533 (5th Cir. 2013) (holding federal habeas review under the AEDPA is limited to the record that was before the state court that adjudicated the claim on the merits (*quoting Cullen v. Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1398)), *cert. denied*, 134 S. Ct. 1565 (2014).

## VIII. <u>Certificate of Appealability</u>

The AEDPA converted the "certificate of probable cause" previously required as a prerequisite to an appeal from the denial of a petition for federal habeas corpus relief into a "Certificate of Appealability" ("CoA").  *See Hill v. Johnson*, 114 F.3d 78, 80 (5th Cir. 1997) (recognizing the "substantial showing" requirement for a CoA under the AEDPA is merely a change in nomenclature from the CPC standard); *Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997) (holding the standard for obtaining a CoA is the same as for a CPC).  The CoA requirement supersedes the previous requirement for a certificate of probable cause to appeal for federal habeas corpus petitions filed after the effective date of the AEDPA.  *Robison v. Johnson*, 151 F.3d 256, 259 n.2 (5th Cir.

1998), *cert. denied*, 526 U.S. 1100 (1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997), *cert. denied sub nom. Monroe v. Johnson*, 523 U.S. 1041 (1998).  Effective December 1, 2009, Rule 11(a) of the Rules Governing Section 2254 Cases in United States District Courts requires this Court to issue or deny a CoA when it enters an order adverse to a federal habeas corpus petitioner.

Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the petitioner must obtain a CoA.  *Miller-El v. Johnson*, 537 U.S. 322, 335-36, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); 28 U.S.C. §2253(c)(2).  Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Jones v. Cain*, 227 F.3d 228, 230 n.2 (5th Cir. 2000) (holding the same); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted).  In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted alone.  *Crutcher v. Cockrell*, 301 F.3d at 658 n.10; *Lackey v. Johnson*, 116 F.3d at 151; 28 U.S.C. §2253(c)(3).

A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right.  *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S. Ct. 2562, 2569, 159 L. Ed. 2d 384 (2004); *Miller-El v. Johnson*, 537 U.S. at 336, 123 S. Ct. at 1039; *Slack v. McDaniel*, 529 U.S. 473, 483, 120 S. Ct. 1595, 1603, 146 L. Ed. 2d 542 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983).  To make such a showing, the petitioner need not show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could

debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard v. Dretke*, 542 U.S. at 282, 124 S. Ct. at 2569; *Miller-El v. Johnson*, 537 U.S. at 336, 123 S. Ct. at 1039; *Slack v. McDaniel*, 529 U.S. at 484, 120 S. Ct. at 1604; *Barefoot v. Estelle*, 463 U.S. at 893 n.4, 103 S. Ct. at 3394 n.4.  This Court is required to issue or deny a CoA when it enters a final Order such as this one adverse to a federal habeas petitioner.  *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim.  "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Johnson*, 537 U.S. at 338, 123 S. Ct. at 1040 (*quoting Slack v. McDaniel*, 529 U.S. at 484, 120 S. Ct. at 1604); *Tennard v. Dretke*, 542 U.S. at 282, 124 S. Ct. at 2569.  In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and whether this Court was correct in its procedural ruling.  *Slack v. McDaniel*, 529 U.S. at 484, 120 S. Ct. at 1604 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct).

Reasonable minds could not disagree over any of this Court's conclusions that (1) petitioner has failed to overcome with clear and convincing evidence the state habeas court's factual finding that juror Bays was not biased, (2) petitioner's ineffective assistance complaints fail to satisfy either prong of *Strickland* analysis, and (3) based upon the state habeas court's factual findings, petitioner's complaint about Article 35.16 of the Texas Code of Criminal Procedure cannot rise above the level of harmless error.   Reasonable jurists would recognize the propriety of this Court deferring to the factual findings made by the same trial judge who presided over petitioner's trial court proceedings, including voir dire.   Furthermore, petitioner's conclusory ineffective assistance claims are unsupported by any fact-specific allegations showing either (1) additional questioning of venire member Bays would have revealed any disqualifying bias or (2) a reasonable probability that, but for the presence of juror Bays on petitioner's jury the outcome of either phase of his trial would have been any different.   *See Woodfox v. Cain*, 609 F.3d 774, 809 n.17 (5th Cir. 2010) (holding assertions about potential, but highly speculative, evidence were insufficient to support a claim of ineffective assistance); *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir.) (conclusory statements regarding the content of uncalled witnesses' testimony insufficient to demonstrate ineffective assistance), *cert. denied*, 562 U.S. 911 (2010).   Petitioner is not entitled to a Certificate of Appealability on any of his claims herein.

Accordingly, it is hereby **ORDERED** that:

1.  The referral of this cause to the Magistrate Judge is **WITHDRAWN.**

2.  Petitioner's motions requesting an evidentiary hearing and discovery, filed March 17, 2015 (ECF nos. 14 & 15), are **DENIED**.

3.   All relief requested in petitioner's petition for federal habeas corpus relief and brief in support, filed October 28, 2014 (ECF nos. 1 & 2), is **DENIED**.

4.   Petitioner is **DENIED** a Certificate of Appealability on all his claims.

5.   All other pending motions are **DISMISSED AS MOOT**, and this case is **CLOSED.**

It is so ORDERED.

SIGNED this 30th day of June, 2015.

_____

FRED BIERY
CHIEF UNITED STATES DISTRICT JUDGE